UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEAN FULLER,<br><br>　　　Plaintiff,<br><br>v.<br><br>BROOKDALE SENIOR LIVING<br>COMMUNITIES, INC., a Delaware<br>corporation, and BROOKDALE<br>EMPLOYEE SERVICES, LLC, a Delaware<br>limited liability company,<br><br>　　　Defendants. | Case No. 1:25-cv-00563-AKB<br><br>**MEMORANDUM DECISION<br>AND ORDER RE DEFENDANTS'<br>MOTION TO COMPEL<br>ARBITRATION AND STAY<br>PROCEEDINGS** |

Pending before the Court is the Motion of Defendants Brookdale Senior Living Communities, Inc. and Brookdale Employee Services, LLC ("Brookdale") to Compel Arbitration and Stay Proceedings (Dkt. 15). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court grants Defendants' motion to compel and denies Plaintiff's request for limited discovery.

## I.    BACKGROUND

Plaintiff Dean Fuller's relationship with Brookdale began amicably on October 29, 2020, when he interviewed for a position as an executive chef at Brookdale's Parkcenter location in Boise (Dkt. 21 at ¶¶ 2–3). He was hired the same day and was asked to begin working on

**MEMORANDUM DECISION AND ORDER – 1**

October 30—a tight turnaround which Fuller attributes to Brookdale's shortage of cooks during the COVID pandemic (*id.*). At that time, Fuller received an Offer Letter which, among other "details of employment," included the following language:

> You will be expected to execute a copy of the Brookdale Dispute Resolution Agreement in the online onboarding process. Execution of that agreement is a condition of employment at Brookdale.

> Your employment will be subject to all of Brookdale's employment policies and procedures, including Brookdale's Associate Handbook, which may be amended, modified or supplemented from time to time.

(Dkt. 16 Ex. 1). Fuller signed the letter and returned it to Brookdale's executive director prior to starting his employment around October 30 (Dkt. 15-1 at 2).[1] Apparently, Fuller did not undergo the formal online onboarding process or receive a copy of the Associate Handbook referenced within the Offer Letter when he started around October 30 (Dkt. 20 at 3; *see* Dkt. 15-1 at 3).

Almost a month later, on November 26, Fuller was asked to complete and submit an Applicant's Statement & Acknowledgement ("ASA"), which is a standard job application form all prospective Brookdale employees must complete (Dkt. 16 at ¶ 7). Fuller signed, initialed, and returned the form, which included this acknowledgment:

> I understand that by signing this application, I agree that in the event a dispute should arise with regard to whether or not I am hired, or if hired, a dispute should arise between my employer and me, that I agree to arbitrate the dispute by a final and binding arbitration. The arbitration to which I am party is governed by the Company's policy with regard to binding arbitration, and the Company has provided me with a copy of that policy, which is contained in the Associate Handbook.

---

[1] The exact date Fuller began working is not clear. *Compare* Dkt. 15-1 at 2 (claiming Fuller began working on November 3) *with* Dkt. 20 at 3 (stating only that Fuller was "employed" starting October 30) *and with* Dkt. 21 at ¶ 3 (claiming Fuller began work on October 30). Ultimately, whether Fuller started work on October 30 or November 3 is immaterial to the Court's analysis.

**MEMORANDUM DECISION AND ORDER – 2**

(*Id.* at Ex. 2). He was also given a copy of the Associate Handbook at that time (Dkt. 15-1 at 3). The Handbook explained, *inter alia*, that "Brookdale has adopted a company-wide Dispute Resolution Agreement" and that "agreement to the terms of the Brookdale Dispute Resolution Agreement is a condition of employment at Brookdale" (Dkt. 16 at 10, Ex. 3).

As Brookdale notes, because "all of [its] associates, including Mr. Fuller, were required to agree" to arbitrate any disputes relating to their employment (*id.* at ¶ 9), Brookdale provided a copy of the Dispute Resolution Agreement ("DRA") to its associates "as a matter of course" (Dkt. 15-1 at 3). Despite this practice, however, Fuller maintains that he never received and never signed the DRA (Dkt 21 at ¶¶ 4–5). Further, he alleges Brookdale ran a "haphazard and disorganized" onboarding process at the time of his hiring and that other employees also onboarded around this time did not receive or sign DRAs (Dkt. 20 at 4; Dkt. 22 at ¶¶ 3–9). Brookdale concedes it is unable to locate a signed DRA with Fuller (Dkt. 15-1 at 8 n.1) but reiterates that Fuller was aware of, and had continuous access to, the DRA during his employment (Dkt. 16 at ¶ 10). Brookdale also notes that Fuller attended a "refresher course" on the Associate Handbook—in which the Handbook and DRA are available—during his employment (*id.*).

Fuller continued working as normal until November 2022, at which point he alleges Brookdale and its employees began engaging in "systematic disability discrimination, harassment, and constructive discharge" following Fuller's cancer diagnosis and attendant health challenges (Dkt. 20 at 2; *see generally* Dkt. 1). According to Fuller, this conduct reached a crescendo in either January or June 2024, resulting in his decision to leave the company (*compare* Dkt. 1 at ¶ 37 *with*

**MEMORANDUM DECISION AND ORDER – 3**

Dkt. 21 at ¶ 2).[2] In October 2025, Fuller filed a complaint, alleging violations of the Idaho Human Rights Act and the Americans with Disabilities Act, in addition to a tort claim (Dkt. 1 at 1; Dkt. 20 at 2). In response, Brookdale filed the pending motion to compel arbitration (Dkt. 15). Brookdale asserts Fuller agreed to arbitrate any disputes arising out of his employment with Brookdale (*id.*).

## II.   LEGAL STANDARD

The Federal Arbitration Act (FAA) controls the enforcement of arbitration clauses. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the FAA provides an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA enunciates a strong federal policy favoring arbitration and requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *accord Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018).

Where an arbitration clause exists within a contract, "there is a presumption of arbitrability." *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *accord Munro v. Univ. of S. California*, 896 F.3d 1088, 1091 (9th Cir. 2018). In determining whether a valid agreement to arbitrate exists, the Court "appl[ies] ordinary state-law principles that govern

---

[2]   Although this discrepancy creates some confusion, the record also undisputedly reflects that Fuller attended a "refresher" course on the employee handbook on March 8, 2024, suggesting his true last date of employment was in June 2024. This issue, however, is ultimately immaterial to the Court's analysis.

the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The burden of showing a valid agreement exists falls to the party seeking to compel arbitration. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010).

A summary judgment standard applies to resolve a motion to compel arbitration. *Burch-Lucich v. Lucich*, No. 1:13-cv-00218-BLW, 2013 WL 5876317, at *4 (D. Idaho Oct. 31, 2013); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[A] denial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration."). Under this standard, the Court treats the facts as it would when ruling on a motion for summary judgment by construing all the facts, and the reasonable inferences from those facts, in a light most favorable to the nonmoving party. *Burch-Lucich*, 2013 WL 5876317 at *4; *see also Hutchins v. DirecTV Customer Serv., Inc.,* Case No. 1:11-cv-422-REB, 2012 WL 1161424, at *4 (D. Idaho Apr. 6, 2012).

### III.   ANALYSIS

Brookdale asks the Court to compel arbitration because Fuller entered into a valid agreement to arbitrate and because the claims in his underlying lawsuit are clearly within the scope of that agreement. Fuller opposes Brookdale's motion only on the first ground (Dkt. 20 at 2, 5–7). Therefore, the Court decides the motion on the narrow question of whether a valid arbitration agreement exists. *See AT&T Techs., Inc.*, 475 U.S. at 650.

Brookdale makes two arguments concerning the existence of a valid arbitration agreement: (1) Fuller agreed to arbitrate when he signed the Offer Letter and began his employment; and (2) Fuller agreed to arbitrate when he completed the ASA and continued his employment. Because the ASA resolves the issue, the Court focuses on that agreement.

"Formation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract. This manifestation takes the form of an offer followed by an acceptance." *Rossman L. Grp., PLLC v. Holcomb*, 579 P.3d 914, 921–22 (Idaho 2025) (quoting *Federal Nat'l Mortg. Ass'n v. Hafer*, 351 P.3d 622, 629-30 (2015)). Courts in Idaho analyze at-will employment agreements as unilateral contracts to more effectively "deal with the realities of the work place." *Watson v. Idaho Falls Consol. Hosps., Inc.*, 720 P.2d 632, 636 (Idaho 1986); *accord Cornell v. Desert Fin. Credit Union*, 524 P.3d 1133, 1136–37 (Ariz. 2023) (an at-will employment contract "typically start[s] with an employer's offer of a wage in exchange for work performed; subsequent performance by the employee provides consideration to create the contract.").

There is no dispute that Fuller entered into an at-will employment agreement with Brookdale on or around October 30, 2020 (Dkt. 16 at 7, Ex. 1) ("Your employment with Brookdale . . . will be considered 'at will' and may be terminated by you, or by Brookdale, with or without cause at any time."). What is less clear, however, is whether that Offer Letter included an agreement to arbitrate disputes. Consequently, the Court focuses on Brookdale's clearer alternative argument, namely that Fuller agreed to arbitration by signing the ASA on November 26, 2020, and continuing his employment (Dkt. 15-1 at 2–3; Dkt. 16 ¶¶ 7, 11).

Fuller completed the ASA around one month after he began working (Dkt. 15-1 at 2–3). Brookdale characterizes Fuller's decision to continue his employment after completing the ASA as assent to arbitration (*id*.). Brookdale argues Fuller must arbitrate because he agreed within the ASA to arbitrate disputes with his employer and also because he acknowledged receiving the Associate Handbook, which specified that agreeing to arbitration was a condition of his continued employment (*id*. at 3–4).

MEMORANDUM DECISION AND ORDER – 6

The Court agrees with Brookdale that Fuller agreed to arbitration when he completed the ASA. Fuller does not dispute that he initialed and signed the ASA on November 26, 2020. The ASA stated that, "in the event a dispute should arise with regard to whether or not I am hired, or if hired, a dispute should arise between my employer and me," Fuller "agree[d] to arbitrate the dispute by a final and binding arbitration" (Dkt. 16 at 9, Ex. 2). That language is sufficient to establish Fuller's written agreement to arbitrate employment-related disputes.

Fuller's objections do not create a genuine dispute of material fact. First, the ASA's statement that the application was "not an offer of employment" does not negate the separate arbitration term Fuller initialed and signed. The application did not, itself, guarantee employment, but it could still contain enforceable terms governing the employment relationship. Second, the asserted one-sidedness of the ASA does not defeat enforcement. Fuller identifies no governing authority requiring an arbitration provision to contain a separately worded reciprocal promise by the employer before an employee's signed agreement to arbitrate may be enforced. Third, while the parties argue over whether the DRA was effectively incorporated, the ASA independently required arbitration either way. By its plain language the ASA applies to disputes concerning disputes between Fuller and his employer and requires such disputes to be resolved by "final and binding arbitration" (*id.*).

The fact that the addition of such a term of employment came after Fuller had been working there for a month is immaterial. In the context of at-will employment, an employer's offer is accepted and a unilateral contract is created when the employee begins performance. *See Watson*, 720 P.2d at 636; *see also Simmons v. Rush Truck Ctrs. of Idaho, Inc.*, No. 4:16-cv-00450-EJL, 2017 WL 2271123, at *4 (D. Idaho May 24, 2017) (noting consideration is found where "[d]efendants continued to employ [p]laintiff on the condition that he agree to continue to work

**MEMORANDUM DECISION AND ORDER – 7**

for the [d]efendants and arbitrate any dispute arising from that employment"). Employers who subsequently wish to modify this agreement may do so "unilaterally," subject only to the requirement of "providing reasonable notice of the change to [their] affected employees." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P.3d 1263, 1269 (Idaho 2012) (citing *Watson*, 720 P.2d at 636). An employee has accepted the new terms when he "continu[es] to work following receipt of such notice." *Id.*; *see also Johnson v. Associated Milk Producers, Inc.*, 886 N.W.2d 384, 392 (Iowa 2016) ("In an at-will contract, a party who gives notice of a changed term effectively offers a new contract in place of the existing one, which the other party may accept by continued performance.").

Thus, even construing the facts and inferences in Fuller's favor, the execution of the ASA and agreement to its terms—including arbitration—established in relevant part the terms of Fuller's employment from that point forward. Fuller makes no argument that he did not receive reasonable notice of that term and Fuller's decision to continue working constituted acceptance of the arbitration requirement. *See Bollinger*, 272 P.3d at 1269.

Finally, even if this were not the case, the Court would still conclude Fuller agreed to arbitrate because the DRA was incorporated by reference. Contracting parties may incorporate by reference a separate, unsigned agreement if the terms to be incorporated are, at the time of contracting, (1) adequately identified and (2) readily available to the parties for inspection. *Harris, Inc. v. Foxhollow Constr. & Trucking, Inc.*, 264 P.3d 400, 416 (Idaho 2011). The ASA informed Fuller arbitration would be governed by "the Company's policy with regard to binding arbitration" and stated that "[Brookdale] has provided me with a copy of that policy, which is contained in the Associate Handbook" (Dkt. 16 at 9, Ex. 2). In signing, he acknowledged receiving the Handbook, which states that covered disputes are "resolved only through binding arbitration, as provided in

the 'Brookdale Dispute Resolution Agreement'" (*id*. at 10, Ex. 3). Brookdale also makes the Handbook and DRA available to employees "at any time during their employment" through the company's internal website or by request to human resources (*id*. at ¶ 10). Fuller thus had the ability to access these documents, and the terms within, when Brookdale presented him with the ASA.

Fuller insists the DRA was not adequately identified and that it was never presented to him during his employment (Dkt. 20 at 9; Dkt. 21 ¶¶ 4–5). An incorporated term is "adequately identified" when the underlying agreement "makes clear reference to [it]." *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 246 P.3d 961, 973 (Idaho 2010). While it is true the ASA did not use the words "Dispute Resolution Agreement," it pointed Fuller to the Associate Handbook, which describes Brookdale's dispute resolution policy and explicitly identifies the DRA.

Fuller's second counterargument—that Brookdale's failure to provide him with the DRA defeats incorporation—does not match the governing standard. The legal question is whether the incorporated term was "readily available" to Fuller, not whether it was actually presented to him. *Harris*, 264 P.3d at 416; *see Knezovich v. DirecTV, L.L.C.*, No. 4:17-cv-00165-MWB, 2017 WL 4574964, at *10 (D. Idaho Oct. 13, 2017) (finding separate arbitration procedure document incorporated, despite never being presented to employee, when it was referenced by underlying document and would be provided to employees upon request "at any time"). Because Fuller could access the relevant documents at any time during his employment, the standard is met regardless of whether the Court credits Fuller's claim that he was never presented with a copy of the DRA. Accordingly, the Court finds that Fuller agreed to arbitrate employment-related disputes.

Fuller requests discovery "on the issue of arbitration," including documents regarding employees hired before Brookdale changed its onboarding process and depositions of unspecified

MEMORANDUM DECISION AND ORDER – 9

individuals before the Court rules on Brookdale's motion (Dkt. 20 at 11–12). Because the ASA independently establishes Fuller's agreement to arbitrate, limited discovery is not warranted; those facts are not material to the Court's ruling. Fuller does not dispute that he initialed and signed the ASA, and the ASA itself required final and binding arbitration of disputes arising between Fuller and his employer if he was hired. Further, even as to incorporation, the governing inquiry is whether the DRA was adequately identified and readily available for inspection, not whether Fuller signed or was physically presented with the DRA. Because the requested discovery would not alter the Court's conclusion that Fuller agreed to arbitrate, Fuller's request for limited discovery is denied.

## IV.    ORDER

**IT IS ORDERED that:**

1.    Brookdale's Motion to Compel Arbitration and Stay Proceedings (Dkt. 15) is **GRANTED**.

2.    Fuller's request for limited discovery is **DENIED**.

3.    The parties shall proceed to arbitration consistent with their agreement.

4.    This matter is **STAYED** pending completion of arbitration.

5.    The parties shall file a joint status report within fourteen days after arbitration concludes, or every 120 days, whichever occurs first.

DATED: June 25, 2026

Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER – 10**